[L. A. No. 8427. In Bank.—July 30, 1927.]

## C. LEWIS WILSON et al., Respondents, v. CROWN TRANSFER AND STORAGE COMPANY (a Corporation), Appellant.

[1] WAREHOUSEMEN — LOSS OF GOODS BY FIRE — NEGLIGENCE — PLEADING—BURDEN OF PROOF.—Where the owner of goods stored in a warehouse alleges that the goods were lost by fire due to negligence of the warehousemen, the burden of proving these allegations is upon the plaintiff, but in a suit in conversion for failure to return the goods upon demand where plaintiff's pleadings contain no such allegation, but the defendant, seeking to justify his refusal to return the goods, sets up their destruction by fire and alleges that the fire was not due to its fault or negligence, the burden is upon the defendant to prove the allegations of its affirmative defense and show that it was free from negligence as to the cause of the fire.

[2] ID.—INSTRUCTIONS—EVIDENCE.—In such a case there was no prejudicial error in giving an instruction embodying the provisions of section 2061 of the Code of Civil Procedure to the effect that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory is within the power of the party, the evidence offered should be viewed with distrust, although there was nothing in the evidence to which the rule could apply.

[3] ID. — UNIFORM WAREHOUSE RECEIPT ACT — INSTRUCTIONS — MINGLING GOODS.—In such a case there was no error in giving instructions reflecting the provisions of section 22 of the Uniform Warehouse Receipt Act to the effect that a warehouseman must keep the goods of a depositor separate from those of other depositors and that if the jury should find that appellant failed in this respect as to respondents' goods, but mingled them

1. Burden of proof in action against warehouseman for loss of goods by fire, note, 19 Ann. Cas. 245. See, also, 24 Cal. Jur. 1048; 25 Cal. Jur. 964; 27 R. C. L. 1002. Presumptions and burden of proof where subject of bailment is destroyed or damaged by fire, note, 9 A. L. R. 559.

2. See 10 Cal. Jur. 1139; 10 R. C. L. 885.

3. Circumstances warranting inference of negligence by warehousemen in case of damage to or loss of property by fire, note, 19 A. L. R. 295.

with goods of other depositors and that this mingling of the goods proximately contributed to the fire, causing the loss of said goods, this was negligence as a matter of law on the part of appellant in the operation of said warehouse, where there was some evidence of the mingling of the goods with a tin box containing some partly burnt matches and a quantity of wrapping paper which was slightly charred around the edges and there was in evidence statements of officers of the appellant that this box had been taken out of the room in which respondents' goods were stored and an intimation that its conduct had been the cause of the fire which destroyed respondents' goods.

[4] Id.—Circumstances of Fire—Refusal to Give Information —Instructions.—There was no error in such a case in instructing the jury that if it found that the warehousemen refused to inform the depositor of the circumstances under which the loss or injury to the goods occurred, so far as he had information concerning them, or wilfully misrepresented the circumstances to the depositor, the warehouseman was presumed to have wilfully or by gross negligence permitted the loss or injury to occur, where, although most of the goods were destroyed by fire, a trunk and two boxes were not destroyed, but were either lost or stolen immediately after the fire, and that upon a demand for the goods an officer of the warehouseman stated that there was no use demanding the goods as they had been burned up.

[5] Id. — Instructions — Elimination of Negligence. — In such a case, there was no error in the court's modifying an instruction and refusing another one, both of which eliminated the question of the warehousemen's negligence as one of the necessary elements of the defendant's defense.

[6] Id. — Limiting Liability — Reason for Rule — Knowledge of Value.—The right of warehouse owners to limit their liability by a notice in the warehouse receipt is given in order that they may protect themselves from unreasonable and excessive demands for loss of goods without any previous knowledge of their real value, but such rule does not apply where it is shown that the warehouseman was fully advised by the owners of the goods as to their true value, and was thus given an opportunity to protect itself and to make a charge upon such valuation.

---

(1) 40 Cyc., p. 473, n. 9.    (2) 4 C. J., p. 1033, n. 37.    (3) 30 Cyc., p. 483, n. 64.    (5) 38 Cyc., p. 1633, n. 12, p. 1721, n. 46.    (6) 40 Cyc., p. 481, n. 41.

6. See 25 Cal. Jur. 961; 27 R. C. L. 997.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ticknor, Carter & Webster for Appellant.

Goudge, Robinson & Hughes for Respondents.

Culver & Nourse, *Amici Curiae.*

CURTIS, J.—Action in conversion brought by plaintiffs as the owners of certain household goods against the defendant for damages upon its failure to return said goods to plaintiffs after the latter had stored them with defendant in its warehouse. The plaintiffs on July 9, 1920, delivered said goods to the defendant for the purpose of having the same stored and kept by defendant in its said warehouse. On July 11, 1922, plaintiffs demanded of defendant a return of said goods, but defendant failed and refused to return the same, except a trunk containing certain clothing and wearing apparel in a greatly damaged condition. The complaint contained three causes of action. The first was for the conversion of the goods, which defendant failed to return, valued at $8,500; the second cause of action was for damages to the trunk and contents which were returned, the damage being alleged to be $450, and the third cause of action was based upon the contract for the storage of said goods. At the trial the court directed plaintiffs to elect whether they would stand on the first or third cause of action and plaintiffs elected to stand upon the first cause of action. Their election, therefore, eliminated the third cause of action and we will have no further occasion to refer to it. The defendant justified its refusal to return said goods upon the ground that a fire occurred in its warehouse on the ninth day of February, 1922, and destroyed the greater portion of said goods, without any fault or negligence on the part of defendant. The cause was tried by a jury, which returned a verdict in plaintiffs' favor in the sum of $3,500, and judgment upon said verdict was entered accordingly. From this verdict the defendant has appealed.

The grounds upon which appellant has based its claim for a reversal of said judgment are the insufficiency of the evidence to support the verdict and errors of law committed by the court in giving certain instructions and in refusing to give certain proposed instructions of the appellant. We will consider these grounds in the order and manner in which the appellant has presented them in its brief. The court instructed the jury that the burden was upon appellant to prove that the goods were destroyed without fault or negligence on its part. In this connection appellant states in its brief, "In considering whether or not the evidence is sufficient to justify the verdict, the effect of this instruction is very important. We are convinced that under the authorities this instruction was erroneous, and for convenience and because of its being so closely related to the question whether or not the verdict is supported by the evidence, we will consider the two questions together." We understand appellant's position to be that if this instruction was erroneous, and consequently the burden of proving negligence as to the cause of the fire was upon the respondents, then the evidence fails to maintain this burden and the verdict in respondents' favor finds no support in the evidence. We do not understand appellant to concede the converse of this proposition to be true, that is, if the burden is upon appellant to show it was free from negligence as to the cause of the fire, then the verdict is supported by the evidence. As we view the case, however, we think this latter proposition is substantially correct. If the burden was upon the appellant to prove that it was free from negligence, then it must be held that the verdict of the jury in respondents' favor amounted to an implied finding that this burden had not been, in the opinion of the jury, overcome by appellant's evidence. This would be so without doubt if there was any conflict in the evidence and we do not think that it can be held that such conflict does not exist. The importance of this instruction, therefore, becomes important. This instruction reads as follows:

"Plaintiffs' first cause of action is based upon an alleged conversion by defendant of the goods stored by them, that is, by the plaintiffs, with the exception of the contents of the trunk returned to plaintiffs, which unreturned goods plaintiffs allege were of the value of $8,500.

"In this form of action, proof of a demand by plaintiffs upon the defendant for the stored goods and of an offer by them to pay any prices due the defendant, and of a refusal by the defendant to redeliver the goods, is sufficient *prima facie* to sustain plaintiffs' action. If you believe from the preponderance of the evidence that the plaintiffs did establish such demand, offer and refusal, then you are instructed that the burden of proof devolved upon the defendant to prove its defense that part of plaintiff's goods were destroyed by fire without fault or negligence on the part of defendant; also to establish a lawful excuse for its failure to return the goods which were not destroyed by fire."

This instruction is supplemented by a further instruction (No. 9) in part as follows: "In this case the burden is upon the defendant to establish by a preponderance of the evidence in its affirmative defense that certain of plaintiffs' goods were destroyed by fire without negligence on its part. Unless the defendant has established by such preponderance its defense that certain goods were destroyed by fire and that such destruction was due to no negligence on its part, your verdict in so far as said goods is concerned should be for the plaintiffs." The force of these instructions was further accentuated by other instructions given by the court, but all of such instructions related to the same subject, that is, the burden of proving that the fire was caused by the negligence of the appellant and they will therefore be considered together as one instruction. Section 8 of the Warehouse Receipt Act (Stats. 1909, p. 437) is as follows:

"A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with—

"(a) An offer to satisfy the warehouseman's lien.

"(b) An offer to surrender the receipt if negotiable, with such endorsements as would be necessary for the negotiation of the receipt, and

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the warehouseman.

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouse-

man to establish the existence of a lawful excuse for such refusal.''

It is conceded that this section of the statute applies to the present action and that respondents complied with all its requirements at the time of their demand upon appellant for the return of said goods. Appellant, however, contends that when it had shown that the goods stored with it were destroyed by fire, that it had established a *prima facie* defense and that the burden then shifts to respondents to show that the fire was due to appellant's negligence. We think this question has been settled by the decisions of this court as well as those of other jurisdictions, so that there can be no doubt as to what is now the law upon this subject. In the cases of *Wilson* v. *California C. R. R. Co.,* 94 Cal. 166 [17 L. R. A. 685, 29 Pac. 861], and *Deiterle* v. *Bekin,* 143 Cal. 683 [77 Pac. 664], the precise question was before this court and decided adversely to appellant's contention. In the case of *Deiterle* v. *Bekin, supra,* this court said: ''The case of *Wilson* v. *Southern Pacific R. R. Co.,* 62 Cal. 164, is cited by respondent to the point that the burden of proof was on the plaintiff here to show that the loss was attributable to defendant's negligence. We have no quarrel with the decision of that case as applied to the facts involved therein, but the facts as well as the issues were different from the facts and issues here. There the plaintiff assumed the burden of showing the negligence of defendant in his complaint, and the question of whether defendant was negligent at all seems to have been in grave doubt. Here the defendant has assumed the burden of showing that the loss was not the result of his negligence in his answer, and that he did not use due care in storing the property we have already seen. As giving further scope to this distinction, see the comment on that case by this court in the case of *Wilson* v. *California etc. R. R. Co.,* 94 Cal. 172 [17 L. R. A. 685, 29 Pac. 861].'' There appears to be a marked line of distinction made by the decision between two classes of cases wherein this question has arisen. [1] Where the plaintiff alleges that the goods stored were lost by fire due to negligence of the defendant, then the burden of proving these allegations is upon the plaintiff, but when the plaintiff's pleadings contain no such allegation, but the defendant, seeking to justify its refusal to return the goods, sets up their

destruction by fire and alleges that the fire was not due to its fault or negligence, then the burden is upon the defendant to prove the allegation of its affirmative defense and show that it was free from negligence as to the cause of the fire.    In addition to the two cases just referred to, the following cases lay down the same rule: *Metropolitan Electric Service Co.* v. *Walker,* 102 Okl. 102 [226 Pac. 1042]; *Caldwell* v. *Skinner,* 100 Kan. 567 [164 Pac. 1166], and *Rudy* v. *Quincy Market etc. Co.,* 249 Mass. 492 [144 N. E. 286].    The two last-mentioned cases were decided under so-called uniform warehouse receipt acts similar in all essential respects to that in force in our own state.    In the case from the supreme court of Massachusetts, the court held under a section of the act corresponding to section 8 of the act of our state that while the rule was different under the common law, it had been changed by the Uniform Warehouse Receipt Act of that state.    In that action the trial court instructed the jury that the burden was upon the plaintiff to show that the defendant was guilty of negligence.    In reversing the case the court held that the instruction was in accordance with the rule of the common law, but the Warehouse Receipt Act had changed the rule and that ''the design of the act was to remove the confusion or uncertainty arising from conflict of statutes or decisions among the several states and to make plain and general the controlling rules of law. . . . It would be difficult to give a reasonable construction to the statute without attributing to it the force of placing the burden of proof for failure to deliver on the warehouseman.''

The appellant relies upon the cases of *Wilson* v. *Southern Pacific R. R. Co., supra, Runkel* v. *Southern Pacific Milling Co.,* 184 Cal. 714 [16 A. L. R. 275, 195 Pac. 398], and *Atwood* v. *Southern California Ice Co.,* 63 Cal. App. 343 [218 Pac. 283].    The case of *Wilson* v. *Southern Pacific R. R. Co., supra,* was considered and discussed in the case of *Deiterle* v. *Bekin, supra.*    Whatever was said in the Runkel and Atwood cases upon this subject was not necessary to the decision of any question in either of those cases.    They were both against warehouse companies and in each case the judgment in favor of plaintiff was affirmed on appeal.    We are satisfied that the great weight of authority in this and other states sustains the instruction given by the court.    It

follows, therefore, that it was not error for the court to so instruct the jury and also that the evidence is sufficient to support the verdict.

[2] The next instruction to which appellant objects embodied the provision of section 2061 of the Code of Civil Procedure, to the effect "That if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." There appears to be no evidence in the record justifying the giving of this instruction. However, it has been held that the giving of it was not prejudicial error when there was nothing in the evidence to which the rule could apply (*Brown* v. *Sharp-Hauser Contracting Co.*, 159 Cal. 89 [112 Pac. 874]; *Lawyer* v. *Los Angeles Pacific Co.*, 23 Cal. App. 543 [138 Pac. 920]).

[3] The court gave two instructions reflecting the provisions of section 22 of the Uniform Warehouse Receipt Act to the effect that a warehouseman must keep the goods of a depositor separate from those of other depositors, and that if the jury should find that appellant failed in this respect as to respondents' goods, but mingled them with goods of other depositors and that this mingling of the goods proximately contributed to the fire, causing the loss of said goods, this was negligence as a matter of law on the part of appellant in the operation of said warehouse. Appellant insists that the record is absolutely destitute of any evidence as to the mingling of any of respondents' goods with those of other depositors with the possible exception of that referring to a tin box containing some partially burnt matches and a quantity of wrapping paper which was slightly charred around the edges. There was evidence that a box and contents answering the above description not belonging to the respondents was on one occasion when the respondent, Mrs. C. L. Wilson, visited the warehouse after the fire, sitting out near the entrance to the room in which respondents' goods were stored; that two officers of the appellant who were with said respondent on said occasion told her that this box had been taken out of the room in which respondents' goods were stored and at least intimated to her that its contents had been the cause of the fire which destroyed respondents' goods. Appellant claims that it was shown

that neither of these officers had any actual knowledge as to where the box and its contents came from and that whatever conclusions they may have entertained upon the subject were founded merely upon hearsay. Admitting this claim of the appellant as to the source of knowledge of its two officers, yet in view of the evidence in the record as to their statement regarding this box and its contents and its probable connection with the origin of the fire, we are not prepared to say that there was absolutely no evidence in the record which would justify the giving of these instructions.

[4] Practically the same situation is shown as to the giving of instruction No. 16 to the effect that if the jury found that the warehouseman refused to inform the depositor of the circumstances under which the loss or injury to the goods occurred, so far as he had information concerning them, or wilfully misrepresents the circumstances to the depositor, then the warehouseman was presumed to have wilfully or by gross negligence permitted the loss or injury to occur. This instruction is based upon section 1838 of the Civil Code. It appears from the evidence while most of the goods of respondents deposited with appellant were destroyed by fire, yet in addition to the trunk and its contents already referred to, there was another trunk and two boxes containing goods belonging to the respondents which were not destroyed, but were either lost or stolen immediately after the fire. Respondents' agent, a Mr. Walker Brown, called upon appellant and made a written demand for the goods shortly after the fire and was informed by one of appellant's officers, its vice-president, that "there was no use demanding the goods, they had been burned up." If this officer knew that a part of respondents' goods had been either lost or stolen, and from his active connection with the affairs of the warehouse it is only reasonable to presume that he had such knowledge, and failed to so inform respondents' agent of that fact, then in the language of said section of the Civil Code, it might be fairly said that he "refuses to inform the depositor of the circumstances under which the loss or injury occurred." This evidence, while very slight, would in our opinion afford some justification for the giving of the last-mentioned instruction, and with it in the record we are unable to say that the

court in the giving of such instruction committed any prejudicial error.

[5] Instruction No. 14 as given by the court in its original form had been prepared by appellant. This instruction informed the jury as to the measure of damages to be applied by them in returning their verdict in the event they should find for the respondents. It then proceeded to inform the jury under what circumstances the appellant would be guilty of negligence. The court, however, before giving it in its final form modified it by inserting therein in one place the words "without negligence on its part" and in another the words "or otherwise injured without the negligence of the defendant." In its modified form the court in effect instructed the jury that the appellant would be guilty of conversion of respondents' goods if the same were destroyed by fire without it was also shown that the fire was not the result of appellant's negligence. The court refused to give another instruction proposed by appellant telling the jury that in determining whether there was a conversion of said goods by appellant the question of negligence was immaterial and should be disregarded. The action of the court in modifying the first of these instructions and refusing the second was not error. In this case, as we have already seen, as to the goods lost by fire the appellant sought to justify its refusal to deliver said goods upon respondents' demand by showing that said goods were destroyed by fire, but as we have further seen proof of loss by fire is not a good defense to respondents' demand unless appellant further showed that the fire was not the result of negligence on appellant's part. In case of the injury to portions of said goods by fire the rule is the same. These two instructions as prepared by appellant, the first by its silence and the second by its expressed direction, eliminated the question of appellant's negligence entirely as one of the necessary elements of appellant's defense. They were, therefore, not correct statements of the law governing appellant's defense, and the action of the court in modifying the one and in refusing the other was proper and legal.

Two other instructions prepared by appellant were refused by the court. These two instructions also dwelt with the same subject and the objections to them will therefore be considered together. These instructions are:

"You are instructed that the plaintiffs are conclusively presumed to know the contents of the warehouse receipt issued by the defendant, from the time that such warehouse receipt was delivered to the plaintiffs."

"You are instructed that inasmuch as the warehouse receipt issued by the defendant for the goods in question contained a provision to the effect that the responsibility of the defendant for the contents of any piece or package is limited to the sum of $25.00, unless the value thereof is made known at the time of storing, and receipted for in the schedule, and an additional charge made for the higher valuation, the plaintiffs cannot in any event recover more than the sum of $25.00 for the contents of any piece or package of goods stored with the defendant, unless you further find by a preponderance of the evidence that the value of the contents of any such piece or package was made known to the defendant either at the time of the storing thereof, or within a reasonable time after the plaintiffs or either of them were informed of such provision, and was receipted for in the schedule, and an additional charge for the higher valuation."

Within a short time after the deposit of said goods in defendant's warehouse they were attached by a creditor of respondents. The appellant thereupon issued its receipt for said goods to the sheriff who levied said attachment and did not deliver any receipt therefor to respondents or either of them at the time the goods were stored. The attachment was not discharged until about January 26, 1922, two weeks prior to the fire. At that time the respondents paid all back storage against said goods and the sheriff indorsed said receipt to respondents and it was delivered to the respondent, Mrs. C. L. Wilson. The receipt contained the following stipulation: "The responsibility of the above company for the condition of any piece or package is limited to the sum of $25, unless the value thereof is made known at the time of storing, and receipted therefor in the schedule; and an additional charge made for the higher valuation." The receipt itself is not before us, neither is there any facsimile thereof in the record, although a copy of the receipt is contained in the reporter's transcript. Respondents' counsel in their brief state that "the warehouse receipt had printed on it, at the top of the page, certain matter in very small type (which, by the way, fills two pages of the reporter's

transcript). A part of this matter is a clause purporting to limit the defendant and appellant's liability to $25 for each package delivered." This statement is not controverted by appellant, so we may assume that it is true. Respondent, Mrs. C. L. Wilson, who appears to be the only respondent who ever saw this receipt, stated that she had never read it after its delivery to her. She further testified that prior to the storage of said goods and shortly thereafter she had conversations with Mr. Aldridge, one of the officers of the warehouse company, in which conversations she asked him if he wished an itemized list of the goods and Mr. Aldridge replied that it was not necessary; whereupon Mrs. Wilson asked that he give them his personal attention as she had her silverware in the dresser drawers and valuables in the trunks and that she had between six and seven thousand dollars' worth of goods and her husband had other "architectural things." She further testified that in the month of January, 1922, and before the fire, she again called upon Mr. Aldridge and stated that she would like to get a loan upon the goods and that they were worth five or six thousand dollars. There is no evidence that any of the officers of the appellant corporation ever suggested to respondents at the time the goods were stored or ever (except through said receipt, which was not given to respondents until the goods had been in storage over eighteen months) notified respondents or either of them that its liability for the loss of said goods was limited to $25 for the contents of any piece or package unless the value thereof was made known at the time of the storage and receipted for in the schedule. It is the contention of appellant, however, that having received said receipt at the time they did, about two weeks before the fire, respondents were conclusively presumed to have read the same and that they are, therefore, conclusively bound by its terms and provisions. The principal authority relied upon by appellant in support of this claim is the case of *Taussig* v. *Bode & Haslett*, 134 Cal. 260 [86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259], where the court referred to the notice contained in a warehouse receipt as follows: "We think it clear that the notice is a part of the contract. It was printed plainly on the face of the receipt. The whole paper is extremely brief. It was the duty of respondents to take note of its contents, if they

had the opportunity and their opportunity was ample. The presumption, therefore, is, that they did read it. Against this presumption there is no evidence, and none, we think, would have been admissible to show that the respondents had failed to do what their duty required them to do.'' A facsimile of that receipt used by the warehouse owner in that case is set forth on page 265 of the opinion. There is no question but that the notice limiting the liability of the warehouse owner, as the court said, ''was printed plainly on the face of the receipt.'' The court could well have held in that case that it was conclusively presumed that the respondents read the notice and were bound thereby. In the present action a very different state of facts is presented. The appellant was notified of the true value of the goods at the time they were left for storage and at least on one occasion thereafter. No demand was ever made by appellant for any increased rate of storage. No receipt was given to the respondents until about eighteen months after the goods were actually stored with appellant. The notice in said receipt where appellant sought to limit its liability was in small type and was merely a part of a large amount of printed matter of the same character appearing on the receipt. Was it error with all those facts before it for the trial court to refuse to instruct the jury that respondents were conclusively presumed to know the contents of the warehouse receipt and that respondents' right to recover for the loss of their goods was conclusively controlled by its provisions? As we have before said, neither the original receipt nor a facsimile thereof is before us. In this respect we have not an equal opportunity with the trial court to pass upon the sufficiency of the notice therein. Evidently the character of this notice had a material bearing upon the trial court in determining whether the respondents were conclusively presumed to know its contents. Then there is evidence to the effect that respondents declared the true value of their goods and offered appellant an itemized list thereof at the time they were delivered to the warehouse and were informed by appellant that such a list was not necessary. It is true respondents did not at that time formally offer to comply with the notice in the receipt limiting appellant's liability for the reason, apparently, that appellant had never brought this notice either directly or indirectly to their

attention at the time of the storage of the goods, and did not even indirectly do so until eighteen months after it accepted the goods. It was, of course, not appellant's fault that the goods were attached and the receipt given to the sheriff, who held them under attachment, but this did not relieve appellant of the duty, if it desired to limit its liability for the loss of the goods, of bringing home to the respondents notice that the goods were accepted and held under such limited liability. The receipt was delivered to the respondents two weeks before the goods were destroyed by fire in the warehouse. There is no evidence that either of the respondents read the finely printed matter thereon containing the limited liability clause. The respondent, Mrs. E. L. Wilson, who apparently had charge of the matter for both respondents, testified that she did not read it. Respondents had already informed appellant of the true value of the goods; the goods had been in storage with appellant eighteen months; no demand or suggestion had been made to respondents for an excess storage charge on account of such valuation. [6] The right of warehouse owners to limit their liability by such a notice is given in order that they may protect themselves from unreasonable and excessive demands for loss of goods without any previous knowledge of their real value. No such reason for applying this rule applies in the present action. The appellant was fully advised by respondents as to the true value of their goods. Appellant was, therefore, in a position to protect itself by giving the respondents' property the care and supervision its rather large value required, and to make a charge therefor based upon such valuation. Under all the facts and circumstances as shown by the evidence in this case, we cannot say that the court committed any error in refusing to give either of the last two mentioned instructions.

The judgment is affirmed.

Langdon, J., Preston, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.